# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued November 8, 2022       Decided July 18, 2023

No. 22-7033

ISAAC HARRIS, ET AL.,
APPELLEES

v.

MEDICAL TRANSPORTATION MANAGEMENT, INC.,
APPELLANT

v.

STAR TRANSPORTATION LLC, ET AL.,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:17-cv-01371)

*Jean-Claude André* argued the cause for appellant. With him on the briefs were *John J. Hathway*, *Darci F. Madden*, and *William F. Ryan*.

*Jennifer B. Dickey*, *Gilbert C. Dickey*, and *Jessica L. O'Brien* were on the brief for *amicus curiae* the Chamber of Commerce of the United States of America in support of appellant.

*William M. Jay* and *David J. Zimmer* were on the brief for *amicus curiae* Prof. Joan Steinman in support of appellant.

*Michael T. Kirkpatrick* argued the cause for appellees. With him on the brief were *Joseph M. Sellers*, *Harini Srinivasan*, and *Wendy Liu*.

*Robert H. Klonoff*, *Elizabeth J. Cabraser*, and *Samuel Issacharoff*, pro se, were on the brief for *amici curiae* Robert H. Klonoff, Elizabeth J. Cabraser, and Samuel Issacharoff, in support of appellees as to Rule 23(c)(4) standard.

Before: MILLETT and CHILDS, *Circuit Judges*, and ROGERS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* MILLETT.

MILLETT, *Circuit Judge*: Isaac Harris, Darnell Frye, and Leo Franklin work as non-emergency medical transportation drivers. In July 2017, they brought a putative class action and Fair Labor Standards Act collective action against Medical Transportation Management, Inc. ("MTM"). Their complaint alleged that MTM is their employer and had failed to pay them and its other drivers their full wages as required by both federal and District of Columbia law.

MTM now appeals the district court's certification of an "issue class" under Federal Rule of Civil Procedure 23(c)(4), and its denial of MTM's motion to decertify plaintiffs' Fair Labor Standards Act collective action. We remand the district court's certification of the issue class because the court failed to ensure that it satisfies the class-action criteria specified in Rule 23(a) and (b). We decline to exercise pendent appellate jurisdiction to review the district court's separate decision on the Fair Labor Standards Act collective action.

3

# I

## A

Federal Rule of Civil Procedure 23 governs class action litigation in the federal courts. Rule 23(a) sets out the threshold criteria for eligibility as a class action, which are that (1) the proposed class be "so numerous that joinder of all members is impracticable"—the numerosity requirement; (2) class members' claims share common questions of law or fact—the commonality requirement; (3) the claims or defenses of the named representative parties be typical of all class members— the typicality requirement; and (4) the representative parties be capable of providing adequate representation to the whole class—the adequacy of representation requirement. FED. R. CIV. P. 23(a)(1)–(4).

In addition to meeting those four prerequisites, Rule 23(b) provides that a proposed class must also qualify as one of three specified "types of class actions." FED. R. CIV. P. 23(b)(1)–(3) (formatting modified); *see Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997).

Rule 23(b)(1) defines the first type of class action as applying when there are multiple claims arising out of the same subject matter and the prosecution of separate actions by or against individual class members "would create a risk of" either "inconsistent or varying" judgments establishing "incompatible standards of conduct" for the party opposing the class. FED. R. CIV. P. 23(b)(1). A class can also proceed under Rule 23(b)(1) if resolution of individual class members' claims would, "as a practical matter" dispose of the interests of the non-party members of the class, or "would substantially impair or impede their ability to protect their interests[.]" *Id.*

4

Rule 23(b)(2) identifies a second type of class action, which may be maintained if the party opposing the class "has acted or refused to act on grounds that apply generally to the class," so that "final injunctive relief or corresponding declaratory relief" would be appropriate to resolve all class claims. FED. R. CIV. P. 23(b)(2).

Finally, a Rule 23(b)(3) class action can be maintained when "questions of law or fact common to class members predominate over any questions affecting only individual members," and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3).

Other parts of Rule 23 set out the procedural and operational requirements of a class action. For example, upon certifying a class action, the district court "must define the class and the class claims, issues, or defenses[.]" FED. R. CIV. P. 23(c)(1)(B). Also, for any class certified under Rule 23(b)(3), the district court is required to provide class members "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." FED. R. CIV. P. 23(c)(2)(B). The notice requires, among other things, a statement informing class members of their right to opt out of the action and thereby to maintain their ability to pursue any action individually. FED. R. CIV. P. 23(c)(2)(B)(v) ("The notice must clearly and concisely state in plain, easily understood language * * * that the court will exclude from the class any member who requests exclusion[.]"); *see also, e.g.*, FED. R. CIV. P. 23(e), (g).

In addition to all of those mandatory class-action requirements, Rule 23 has permissive provisions concerning the district court's management of class litigation. This case concerns the application of one of them, Rule 23(c)(4), which

provides: "When appropriate, an action may be brought or maintained as a class action with respect to particular issues." FED. R. CIV. P. 23(c)(4).

This appeal asks us to decide what role Rule 23(c)(4) plays in class certification decisions and, in particular, whether a Rule 23(c)(4) issue class must also meet the Rule 23(a) and (b) class action requirements.

**B**

**1**

Non-emergency medical transportation services are used by individuals who receive Medicaid and lack transportation for their medical appointments. MTM contracts with the District of Columbia to provide District residents with such services. To fulfill those contracts, MTM engages dozens of subcontractors.

Plaintiffs Harris, Frye, and Franklin (collectively, "Drivers") are non-emergency medical transportation drivers in the District of Columbia. The Drivers allege that while they and hundreds of other drivers were working for MTM and its subcontractors, MTM failed to pay their legally mandated wages under federal and District law. They allege that they and the other drivers routinely started work between 5:00 a.m. and 7:00 a.m., and worked until between 5:00 p.m. and 8:00 p.m. Nevertheless, the Drivers were paid a flat rate for driver services that "regularly fell below" the legally required "minimum wage and the living wage rates" and omitted overtime wages. Compl. at 9–10, J.A. 40–41.

The Drivers brought suit against MTM under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), under

District of Columbia wage-and-hour laws, *see* D.C. Code § 32-1001 (Minimum Wage Act); *id.* § 2-220.01 *et seq.* (Living Wage Act); *id.* § 32-1302 (Wage Payment and Collection Law), and for common-law breach of contract. As required to state a claim under those causes of action, the Drivers' complaint alleged that MTM was an employer of the Drivers under federal law and a general contractor under District law.

Whether MTM is either an employer or a general contractor with respect to the Drivers is a threshold question of liability for MTM. If MTM is deemed the employer of the plaintiffs, or a joint employer with its subcontractors, MTM may be held liable under both the FLSA and District law. And if it is a "general contractor," that status would separately subject it to strict liability for violations of District law by its subcontractors. *See Harris v. Medical Transp. Mgmt., Inc.*, 300 F. Supp. 3d 234, 246 (D.D.C. 2018) ("*Harris I*"). But if, as MTM argues, it neither employed nor acted as a general contractor in relation to the Drivers, it cannot be liable for any underpayment of wages. In that case, the subcontractors MTM engaged and to which the Drivers directly reported would be the only proper defendants.

**2**

MTM moved to dismiss the complaint in its entirety. The district court granted the motion as to the Drivers' common-law breach of contract claim, but denied it as to the Drivers' claims under federal and District statutory law. *Harris I*, 300 F. Supp. 3d at 237. Then the district court granted the Drivers' motion for conditional certification of an FLSA collective action, approved the Drivers' proposed collective action notice, and equitably tolled the limitations period for members of the collective action. *See Harris v. Medical Transp. Mgmt., Inc.*, 317 F. Supp. 3d 421, 423–424 (D.D.C. 2018) ("*Harris II*").

The Drivers subsequently filed a motion to certify a class action under Rule 23(b)(3) for the non-FLSA claims. The district court denied the motion. *Harris v. Medical Transp. Mgmt., Inc.*, No. 17 Civ. 01371, 2020 WL 5702085 (D.D.C. Sept. 24, 2020) ("*Harris III*"). The district court found that the proposed class action met the requirements of Rule 23(a), and the superiority requirement of Rule 23(b)(3)—that is, it found that a class action would be "superior to other available methods for fairly and effectively adjudicating the controversy[,]" FED. R. CIV. P. 23(b)(3). *Harris III*, 2020 WL 5702085, at *4–7. The district court also found that the question of whether MTM was, with its subcontractors, a joint employer of the putative class members "meets the predominance requirement of Rule 23(b)(3)" because evidence common to the class would be used to resolve it. *Id.* at *9.

But the district court held that individualized evidence would be required to assess whether MTM's payment system was responsible for the underpayment of wages, given "numerous metrics that would be relevant to assessing MTM's liability as to each class member." *Harris III*, 2020 WL 5702085, at *9. Accordingly, because the evidence common to the putative class as a whole did not predominate over such individual considerations, the district court declined to certify a class under Rule 23(b)(3). *Id.* at *12. The district court also denied without prejudice the Drivers' motion in the alternative to certify an issue class under Rule 23(c)(4). *Id.* at *13.

Following supplemental briefing, the district court granted in part the Drivers' renewed motion to certify issue classes under Rule 23(c)(4). *Harris v. Medical Transp. Mgmt., Inc.*, No. 17 Civ. 01371, 2021 WL 3472381, at *1 (D.D.C. Aug. 6, 2021) ("*Harris IV*"). The district court certified one issue class, defining that class as encompassing the two questions of (1)

8

whether MTM is a joint employer of the putative class members; and (2) whether MTM is a general contractor under D.C. law, and thereby strictly liable for any wage law violations committed by its subcontractors. *Id.* at *9. The district court reasoned that certifying an issue class for those two issues would "materially advance the litigation" because, if MTM is neither a joint employer nor a general contractor, it will not be liable in the lawsuit for any claims. *Id.* (citation omitted). But if MTM meets one or both of those definitions, the Drivers will have established a critical component of their case. *Id.*; *see also Harris III*, 2020 WL 5702085, at *6. The district court also noted that the Drivers would rely on evidence common to all proposed class members to attempt to prove that MTM is a joint employer or a general contractor. *Harris IV*, 2021 WL 3472381, at *9.

In the same opinion, the district court denied MTM's motion to decertify the plaintiffs' FLSA collective action. A collective action under the FLSA requires the members to be "similarly situated." 29 U.S.C. § 216. That term is not defined by the FLSA. Because our circuit has not yet established a standard for "similarly situated," the district court applied a test from the Second and Ninth Circuits, which asks whether "party plaintiffs [are] alike with regard to some *material* aspect of their litigation." *Harris IV*, 2021 WL 3472381, at *3 (quoting *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1113–1114 (9th Cir. 2018)) (emphasis in *Campbell*; alteration in *Harris*); *see also Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 515–522 (2d Cir. 2020), *cert. dismissed*, 142 S. Ct. 639 (2021). The district court then determined that the collective members were similarly situated with respect to the question of whether MTM is their joint employer and, because that inquiry is a material aspect of the litigation, the court denied MTM's motion to decertify the collective action. *Harris IV*, 2021 WL 3472381, at *6–7.

9

**3**

After filing a petition for leave to file an interlocutory appeal under Rule 23(f) in this court, *see In re Medical Transp. Mgmt., Inc.*, No. 21-8006, MTM also moved the district court to certify the FLSA decision for interlocutory review under 28 U.S.C. § 1292(b) and to stay proceedings pending the appeal. The district court denied both motions. *Harris v. Medical Transp. Mgmt., Inc.*, No. 17 Civ. 01371, 2021 WL 5446829, at *1 (D.D.C. Nov. 22, 2021) ("*Harris V*").

This court subsequently granted MTM's petition to file an appeal of the class certification decision and directed the parties to address whether we should also exercise pendent appellate jurisdiction over the FLSA decision. *In re Medical Transp. Mgmt., Inc.*, No. 21-8006, 2022 WL 829169, at *1 (D.C. Cir. March 17, 2022).

**II**

The district court had jurisdiction over this action under 28 U.S.C. § 1331 and § 1367. We have jurisdiction to consider MTM's interlocutory appeal of the district court's class certification order under 28 U.S.C. § 1292(e). We decline, though, to exercise pendent appellate jurisdiction to review the district court's denial of FLSA decertification.

**III**

While interlocutory appeals are generally disfavored, Rule 23(f) provides that "[a] court of appeals may permit an appeal from an order granting or denying class-action certification" under Rule 23. FED. R. CIV. P. 23(f). An appeal will generally be warranted "when: (1) 'there is a death-knell situation for

either the plaintiff or defendant[,]' in that the class-certification decision will effectively end the party's ability to litigate; (2) 'the certification decision presents an unsettled and fundamental issue of law relating to class actions, important both to the specific litigation and generally, that is likely to evade end-of-the-case review;' or (3) 'the district court's class certification decision is manifestly erroneous.'" *In re White*, 64 F.4th 302, 307 (D.C. Cir. 2023) (alteration in original) (quoting *In re Lorazepam & Clorazepate Antitrust Litig.*, 289 F.3d 98, 105 (D.C. Cir. 2002)).

Applying those factors, we hold that interlocutory review of the class certification decision is appropriate in this case. The district court's decision to certify an issue class "'presents an unsettled and fundamental issue of law relating to class actions' that is 'important' and 'likely to evade end-of-the-case review[.]'" *In re Medical Transp. Mgmt., Inc.*, 2022 WL 829169, at *1 (quoting *Lorazepam*, 289 F.3d at 99–100). More specifically, the question of under what conditions a Rule 23(c)(4) "issue class" can be certified when no lawsuit or cause of action has been certified as a class is an "unsettled and fundamental issue of law relating to class actions, important both to the specific litigation and generally[.]" *See Lorazepam*, 289 F.3d at 105. This court has not yet addressed that question. *Cf. In re Johnson*, 760 F.3d 66, 75 (D.C. Cir. 2014) (recognizing "a controversy over the proper use of issue classes," but declining to review "the district court's determination of how best to manage the issues before it" because "the appropriate use of an issue class was not raised or briefed"); *In re Brewer*, 863 F.3d 861, 875–876 (D.C. Cir. 2017) (finding no "manifest error" in district court's failure to "certif[y] a Rule 23(c)(4) issue class on liability alone").

Other circuits have applied Rule 23(c)(4) in a variety of ways. *See, e.g.*, *In re Nassau County Strip Search Cases*, 461

F.3d 219, 226–227 (2d Cir. 2006) ("[A] court may employ subsection (c)(4) to certify a class as to liability regardless of whether the claim as a whole satisfies Rule 23(b)(3)'s predominance requirement."); *Russell v. Educational Comm'n for Foreign Med. Graduates*, 15 F.4th 259, 269–270 (3d Cir. 2021) ("[D]istrict courts may certify 'particular issues' for class treatment even if those issues, once resolved, do not resolve a defendant's liability, provided that such certification substantially facilitates the resolution of the civil dispute, preserves the parties' procedural and substantive rights and responsibilities, and respects the constitutional and statutory rights of all class member[s] and defendants."), *cert. denied*, 142 S. Ct. 2706 (2022); *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 438–446 (4th Cir. 2003); *id.* at 441 ("[S]ubsection 23(c)(4) should be used to separate one or more claims that are appropriate for class treatment, provided that within that claim or claims (rather than within the entire lawsuit as a whole), the predominance and all other necessary requirements of subsections (a) and (b) of Rule 23 are met.") (internal quotation marks omitted); *Castano v. American Tobacco Co.*, 84 F.3d 734, 745 n.21 (5th Cir. 1996) ("The proper interpretation of the interaction between subdivisions (b)(3) and (c)(4) is that a cause of action, as a whole, must satisfy the predominance requirement of (b)(3) and that (c)(4) is a housekeeping rule that allows courts to sever the common issues for a class trial."); *Martin v. Behr Dayton Thermal Prods. LLC*, 896 F.3d 405, 413 (6th Cir. 2018) ("Rule 23(c)(4) contemplates using issue certification to retain a case's class character where common questions predominate within certain issues and where class treatment of those issues is the superior method of resolution."); *McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 672 F.3d 482, 491–492 (7th Cir. 2012) (Rule 23(c)(4) issue class could be used to resolve only a disparate impact issue); *cf. Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996) ("Even if the common

questions do not predominate over the individual questions so that class certification of the entire action is warranted, Rule 23 authorizes the district court in appropriate cases to isolate the common issues under Rule 23(c)(4)(A) and proceed with class treatment of these particular issues.") (citing the earlier version of Rule 23(c)(4)).[1]

Given the variety of approaches and the frequency with which the certification of issue classes arises, the propriety of the court's issue-class certification decision in this case presents "an important, recurring, and unsettled question of class action law." *See In re White*, 64 F.4th at 310.

In addition, the question of when issue classes can be certified is likely to evade end-of-the-case review. That would happen, for example, if the district court holds that MTM is neither an employer nor a general contractor, resolving this case on the merits in MTM's favor. MTM might lack any remaining injury from the class certification decision at that point and so be unable or unlikely to seek review of the question. Likewise, even if MTM is found to be a joint employer or a general contractor, it could prevail on the merits, resolving the suit in its favor. That too would make end-of-case review unlikely.

For those reasons, we find it appropriate to exercise our discretion to entertain this interlocutory appeal. *See In re White*, 64 F.4th at 312. We review the class certification

---

[1] As originally adopted, Rule 23(c)(4) read: "When appropriate (A) an action may be brought or maintained as a class action with respect to particular issues, or (B) a class may be divided into subclasses and each subclass treated as a class, and the provisions of this rule shall then be construed and applied accordingly." FED. R. CIV. P. 23(c)(4) (1966). After the 2007 amendments to Rule 23, the former Rule 23(c)(4)(B) is now Rule 23(c)(5).

decision for an abuse of discretion. *Califano v. Yamasaki*, 442 U.S. 682, 703 (1979); *Garcia v. Johanns*, 444 F.3d 625, 631 (D.C. Cir. 2006). The district court's interpretation of Rule 23 is a question of law that we review *de novo*. *See Orozco v. Garland*, 60 F.4th 684, 688 (D.C. Cir. 2023).

**IV**

We hold that the district court abused its discretion by certifying the issue class under Rule 23(c)(4) without first determining that Rule 23's requirements for class certification were met as to the issue class. Rule 23(c)(4) does not create a fourth category of class action beyond those specified in Rule 23(b). Instead, Rule 23(c)(4) elucidates what district courts can do as part of managing Rule 23-qualifying class actions.

As a result, any "issue class" under Rule 23(c)(4) must also meet the threshold requirements of Rule 23(a) and be maintainable under one of the class action types laid out in Rule 23(b). Because the district court here did not explain how the issue class it certified met the requirements of Rule 23(a) and (b)—with (b)(3) being the relevant type of class action in this case—we remand for further consideration.

**A**

Under the plain text of Rule 23, all certified classes must meet both the threshold requirements of Rule 23(a) and be maintainable under one of Rule 23(b)'s categories. There is no freestanding class to be certified under Rule 23(c)(4).

To start, courts repeatedly have held that the district court must apply the requirements of Rule 23(a) and Rule 23(b) when certifying any class. Those criteria are fundamental prerequisites to the existence of a class action. *See* FED. R. CIV.

P. 23(a) (describing "prerequisites" to class action); FED. R. CIV. P. 23(b)(3) (requiring district court to "find[]" predominance and superiority); *see also, e.g.*, *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (Rule 23(b)(3) "requires that, before a class is certified under that subsection, a district court" make the required findings of predominance and superiority); *In re White*, 64 F.4th at 313 (abuse of discretion not to apply Rule 23(a) factors); *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 542 (9th Cir. 2013) ("A party seeking class certification must satisfy the requirements of Federal Rule of Civil Procedure 23(a) and the requirements of at least one of the categories under Rule 23(b)."); *Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 362 (4th Cir. 2004) ("A district court may, in its discretion, order that an action proceed as a class action only if it finds that the requirements of Federal Rule of Civil Procedure 23 have been satisfied."); *In re LifeUSA Holding Inc.*, 242 F.3d 136, 143 (3d Cir. 2001) ("In order to be certified, a class must satisfy the four requirements of Rule 23(a) of the Federal Rules of Civil Procedure[.] * * * If these Rule 23(a) requirements are satisfied, the court must also find that the class is maintainable under Rule 23(b)(1), (2), or (3).").

Rule 23(c)(4) does not give the district court a pass on those preconditions. To the contrary, Rule 23(c)(4) says upfront that an issue class may only be certified "[w]hen appropriate[.]" FED. R. CIV. P. 23(c)(4). That appropriateness inquiry naturally includes the elementary class-action requirements of Rules 23(a) and (b), which ensure that class litigation is fair, suitable, and advisable—that is, appropriate.

What is more, Rule 23(c)(4)'s use of the phrase "maintained as a class action" echoes Rule 23(b)'s language that "[a] class action may be maintained" if, and only if, Rule 23(a) is satisfied and if the proposed class falls into one of Rule

23(b)'s types. Plus, Rule 23(c)(4) continues (and ends) by stating that "an action may be brought or maintained *as a class action* with respect to particular issues." FED. R. CIV. P. 23(c)(4) (emphasis added). That textually directs the court right back to the requirements of Rule 23(a) and Rule 23(b) that set out the basic ground rules for bringing or maintaining a class action. *See also Russell*, 15 F.4th at 262; 2 NEWBERG & RUBENSTEIN ON CLASS ACTIONS § 4:92 (6th ed.) ("[T]he proponent of an issue class—like the proponent of any other class action—must demonstrate that the proposed issue class meets all of the requirements of Rule 23(a) and fits into one of the categories of Rule 23(b)[.]").

Finally, the structure of Rule 23 in general and Rule 23(c) in particular counsel against finding a standalone Rule 23(c)(4) class. Rule 23(c)(2) spells out the notice requirements for each variant of a Rule 23(b) class. But it is silent about any notice provisions under Rule 23(c)(4) alone. *See* FED. R. CIV. P. 23(c)(2). Nor does Rule 23(c)(4) contain any substantive criteria or requirements of its own for determining if class status is warranted or protecting the rights of absent class members. It would be passing strange for a Rule as systematized, specific, and detailed as Rule 23 to unleash a distinct and wholly unregulated class device in (c)(4)'s single sentence.

In short, Rule 23's text and structure offer no quarter to the view that Rule 23(c)(4) creates an independent type of class action that is freed from all of Rule 23's other class-action prerequisites. So the district court should have ensured that the

issue class it certified met all, and not just some, of Rule 23(a) and (b)'s preconditions to class status.

## B

## 1

Applying Rule 23(a) to the issue class before us, we agree with the district court that those class-action prerequisites are satisfied.

First, the proposed class meets Rule 23(a)(1)'s numerosity requirement. *See Harris III*, 2020 WL 5702085, at *4–5. "The numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations." *General Tel. Co. of the Nw. v. Equal Emp. Opportunity Comm'n*, 446 U.S. 318, 330 (1980).

In this case, there are 862 putative issue class members. *See Harris III*, 2020 WL 5702085, at *5. MTM "does not dispute these numbers and makes no arguments against numerosity[.]" *Id.* We agree with the district court that such a class qualifies as "so numerous that joinder of all members is impracticable[.]" *See* FED. R. CIV. P. 23(a)(1).

Second, the proposed class meets Rule 23(a)(2)'s commonality requirement. "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury[.]'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–350 (2011) (quoting *General Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). That means that putative

class members' "claims must depend upon a common contention[.]" *Id.* at 350.

In this case, there are "at least two" questions of law or fact common to the class: "(1) Whether MTM qualifies as a 'joint employer' and (2) whether MTM qualifies as a general contractor" under D.C. law. *Harris III*, 2020 WL 5702085, at *5. Those common contentions and proposed common answer cut across all putative class members and depend on common evidence, satisfying the commonality requirement.

MTM argues that the commonality requirement is not met because there is no "common policy or course of conduct" by MTM across the class. MTM Opening Br. 34 (citing *Dukes*, 564 U.S. at 344–345). But Rule 23(a)(2) does not require that a single policy or course of conduct be the throughline for all plaintiffs. Rather, the putative class members must have a "common contention" of "such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. The questions of whether MTM is a joint employer to the Drivers or a general contractor under D.C. law are two such questions. That is, determining whether MTM crosses the threshold of liability is "central to" and potentially dispositive of "the validity" of the Drivers' claims, *see id.*

Finally, the district court found, and MTM does not dispute, that the Drivers' claims and defenses are typical of the class and that they and their counsel will fairly and adequately represent the class. *See* FED. R. CIV. P. 23(a)(3–4); *Harris III*, 2020 WL 5702085, at *6–7. We agree. On this record, no distinction between the Drivers' claims and defenses and those of the other class members has been identified. *See J.D. v. Azar*, 925 F.3d 1291, 1322 (D.C. Cir. 2019) (per curiam) ("[T]o

destroy typicality, a distinction must differentiate the 'claims or defenses' of the representatives from those of the class.") (emphasis omitted). Nor is there any conflict of interest between them and the class. *See Amchem Prods., Inc.*, 521 U.S. at 625 ("The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent.").

**2**

**a**

Where the district court erred was in failing to ensure that the issue class also satisfied one of the three types of authorized class actions under Rule 23(b). The parties agree that the only relevant class type in this case is a (b)(3) class. The Drivers originally sought certification under Rule 23(b)(3), and the district court examined only the relationship between Rule 23(b)(3) and Rule 23(c)(4) before certifying the issue class.

The problem, though, is that the district court failed to find that within the issues for the certified class—whether MTM is a joint employer or general contractor—common questions of law or fact predominate over individual questions, as Rule 23(b)(3) requires. *See* FED. R. CIV. P. 23(b)(3). The court also failed to find that the use of an issue class to address those questions would be a superior litigation device to other available tools for resolving the common questions. *See id.* Without those predicate determinations, the district court erred in certifying an issue class under Rule 23(c)(4). In addition, because the issue class arises under Rule 23(b)(3), the district court had to determine how notice could effectively be given in the case. *See* FED. R. CIV. P. 23(c)(2)(B). Notice is an indispensable component of a class action under Rule 23(b)(3).

Yet the court did not address how notice would be administrable for this class.

The Drivers argue that the district court did make the required (b)(3) findings when it ruled on the initial motion for class certification, *see Harris III*, 2020 WL 5702085, at *7, and that it silently incorporated those findings into its certification of the issue class. *See* Harris Br. 6; Oral Arg. Tr. 48.

The Drivers are mistaken. The district court said that it would consider predominance only "*after* identifying issues suitable for class treatment[,]" and then it only reviewed predominance as to the two issues for which it did *not* certify an issue class. *See Harris IV*, 2021 WL 3472381, at *8, *10–11; *see also* Oral Arg. Tr. 48–50 (Drivers' counsel unable to point the court to predominance analysis for the certified issues); *see also* Harris Br. 6 (describing the district court as relying on *Harris III* analysis "except as to predominance"). Nor did the district court ever find—in the original class-certification decision or otherwise—that the issue class met the superiority requirement.

Because the analysis underlying the class certification judgment omitted those key determinations, we remand for the district court to determine whether its issue class can appropriately be maintained under all of the Rule 23(b)(3) criteria and consistent with Rule 23(c)(2)(B)'s notice mandate. We outline next some of the key elements of those inquiries implicated in this case.

**b**

In undertaking the predominance inquiry on remand, the district court must ensure that the common questions within the certified issues predominate over any individual ones. The

district court must also evaluate the relationship any certified issues have as to the dispute as a whole.  A certified issue class should encompass a reasonably and workably segregable aspect of the litigation.  For example, an issue class may be appropriate where common questions predominate as to (i) the determination of liability, giving rise to a liability-only issue class; (ii) proof of a key element of a cause of action, such that there is an issue class for that element; or (iii) another aspect of the controversy that, if decided, would materially advance the fair resolution of the litigation.

We start with common ground, which is that Rule 23(c)(4) may be used to certify an issue that is less than an entire cause of action.  *See* Harris Br. 9; Oral Arg. Tr. 11, 15, 19; *see also* FED. R. CIV. P. 23(c)(1)(B) (district court's order certifying class action "must define the class and the class * * * issues").

One common use of Rule 23(c)(4) is for resolving the issue of liability.  *See In re Brewer*, 863 F.3d at 875–876 (noting that district courts have the discretion to "certif[y] a Rule 23(c)(4) issue class on liability alone").  Even where damages for a putative class action may require individualized calculations, courts have routinely held that those individual considerations do not necessarily preclude certification of a class—as long as the liability issue is common to the class and that commonality predominates over any other individualized components of the litigation.  *See Tyson Foods*, 577 U.S. at 453–454 (Where "one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.") (citation omitted); *McCarthy v. Kleindienst*, 741 F.2d 1406, 1415 (D.C. Cir. 1984) ("A district court should, of course, ordinarily consider such well-

established methods as bifurcating the trial into liability and damages phases before denying certification."); *id.* ("[T]he mere fact that damage awards will ultimately require individualized fact determinations is insufficient by itself to preclude class certification.").

Similarly, courts have embraced the use of a Rule 23(c)(4) issue class for liability only, even if the remedial claims destroy predominance for the cause of action as a whole. *See, e.g.*, *Nassau County*, 461 F.3d at 227 ("[A] court may employ subsection (c)(4) to certify a class as to liability regardless of whether the claim as a whole satisfies Rule 23(b)(3)'s predominance requirement."); *Pella Corp. v. Saltzman*, 606 F.3d 391, 394 (7th Cir. 2010) (per curiam) ("A district court has the discretion to split a case * * * by certifying a class for liability alone where damages * * * may require individualized assessments.").[2]

As MTM pointed out at oral argument, certification of an issue class can also be appropriate where there is an affirmative defense applicable to a large number but not all class members. *See* Oral Arg. Tr. 6, 11, 15; *cf. Nassau County*, 461 F.3d at 230 (holding that district court erred by finding that presence of affirmative defense barred certification of liability class); *see*

---

[2] *See also, e.g.*, FED. R. CIV. P. 23 Advisory Committee's Note to 1966 amendment, 39 F.R.D. 69, 106 (1966) (Under Rule 23(c)(4), "in a fraud or similar case the action may retain its 'class' character only through the adjudication of liability to the class; the members of the class may thereafter be required to come in individually and prove the amounts of their respective claims."); *cf. Smilow v. Southwestern Bell Mobile Sys., Inc.*, 323 F.3d 32, 41 (1st Cir. 2003) ("[E]ven if individualized determinations were necessary to calculate damages, Rule (23)(c)(4)(A) would still allow the court to maintain the class action with respect to other issues.") (referring to the pre-2007 version of Rule 23(c)(4)).

*also Smilow v. Southwestern Bell Mobile Sys., Inc.*, 323 F.3d 32, 39 (1st Cir. 2003) (discussing the role of affirmative defenses in Rule 23(b)(3) predominance analysis).

Courts have also recognized other appropriate issues for (c)(4) issue classes. *See*, *e.g.*, *Russell*, 15 F.4th at 270 (holding that "district courts may certify 'particular issues' for class treatment even if those issues, once resolved, do not resolve a defendant's liability") (quoting FED. R. CIV. P. 23(c)(4)); *McReynolds*, 672 F.3d at 490–491 (finding that disparate impact claims could "most efficiently be determined on a class-wide basis, consistent with" Rule 23(c)(4)); *Valentino*, 97 F.3d at 1234 ("Rule 23 authorizes the district court in appropriate cases to isolate the common issues under [Rule 23(c)(4)] and proceed with class treatment of these particular issues."). Only one circuit has suggested otherwise. *See Castano*, 84 F.3d at 745 n.21 (observing in dicta that "a cause of action, as a whole, must satisfy the predominance requirement of (b)(3)").

But when creating issue classes, district courts must heed Rule 23's carefully calibrated limits on class certification. The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant" class litigation of their substantive claims, rather than bringing individual suits. *See Amchem Prods., Inc.*, 521 U.S. at 623. In that way, the predominance inquiry is an important safeguard against unreasonably fractured litigation, and simultaneously protects the rights of named parties and absent class members alike. *See id.* at 615 (Predominance ensures that the class action is "promot[ing] * * * uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.") (internal quotation marks omitted). Predominance also helps courts establish that evidence can be fairly and sensibly presented in a way that protects the parties' competing interests. *See Russell*, 15 F.4th

at 270; 2 NEWBERG & RUBENSTEIN § 4:49 (The predominance requirement ensures that individual class members are "sufficiently similarly situated" such that "due process permits their claims to be compromised in the aggregate.").

So district courts must ensure that Rule 23(c)(4)'s authorization of issue classes does not end up at war with Rule 23(b)(3)'s predominance requirement: Plaintiffs cannot effectively skirt the functional demands of the predominance requirement by seeking certification of an overly narrow issue class and then arguing that the issue (inevitably) predominates as to itself. *Cf. Castano*, 84 F.3d at 745 n.21 (noting that such an interpretation would "eviscerate the predominance requirement").

Nor can predominance become a tautological inquiry. Instead, when certifying any issue class, the district court must explain how, within the context of the particular litigation before it, common questions predominate within a reasonably and workably segregable component of the litigation. An issue class cannot consist of a single common question that predominates as to itself. Lastly, because the baseline for predominance is the resolution of all issues within a fair and administrable trial process, courts must also address how dividing the litigation through the creation of an issue class protects all parties' interests in the full presentation of their claims and evidence.

**c**

In applying the superiority requirement on remand, the district court must explain how the use of issue classes is "superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3). This requirement "reinforce[s] the point that the court with the aid

of the parties ought to assess the relative advantages of alternative procedures for handling the total controversy[.]" FED. R. CIV. P. 23 Advisory Committee's Note to 1966 amendment, 39 F.R.D. 69, 103 (1966).

The superiority requirement ensures that class adjudication makes the litigation more manageable and promotes the prompt and efficient resolution of the case. *See, e.g.*, *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 860 (1999) ("One great advantage of class action treatment of mass tort cases [at issue in *Ortiz*] is the opportunity to save the enormous transaction costs of piecemeal litigation[.]"); *Califano*, 442 U.S. at 701 ("[T]he class-action device saves the resources of both the courts and the parties by permitting an issue potentially affecting [the putative class members] to be litigated in an economical fashion under Rule 23.").

The district court here did not explain how creating this issue class was superior to other potential ways of handling the litigation. Neither was the Drivers' counsel at oral argument able to identify any benefits to judicial economy that would make class litigation superior to other trial management tools in this case, beyond tolling the statute of limitations. *See* Oral Arg. Tr. 41–43.

Yet one alternative to class litigation might be deciding a partial summary judgment motion focused on the issues proposed to be certified—such as MTM's employer or general contractor status. *See Wright v. Schock*, 742 F.2d 541, 543–544 (9th Cir. 1984) ("Under the proper circumstances—where it is more practicable to do so and where the parties will not suffer significant prejudice—the district court has discretion to

rule on a motion for summary judgment before it decides the certification issue.").

To be sure, Rule 23(c)(1)(A) directs the district court to determine the question of certification "[a]t an early practicable time[.]" FED. R. CIV. P. 23(c)(1)(A). And our district court's Local Rules require a certification motion within 90 days of filing the complaint, absent an extension by the district court. *See* Local Rule 23.1(b).

But the district court in this case suspended the 90-day deadline pending the resolution of MTM's motion to dismiss. *See* Minute Order, *Harris*, No. 17 Civ. 01371 (D.D.C. Oct. 26, 2017). And the litigation here unfolded at such a pace that the motion to certify the class was not fully submitted until the case was nearly three years old. The district court therefore should at least have considered whether, at that point, it remained a superior form of litigation to certify an issue class rather than to resolve the threshold questions going to MTM's potential liability by way of a partial summary judgment motion (such as the Drivers' pending summary judgment motion on MTM's status as a joint employer or a general contractor).

**d**

Finally, the district court's indication that notice is not required for an issue class under Rule 23(b)(3) was incorrect. In acting on MTM's renewed motion for a stay pending appeal, the court dismissed MTM's argument that it would be irreparably harmed by the issuance of class notice that might have to be withdrawn later. The court explained that there would be no irreparable harm to MTM, agreeing with the Drivers that no notice needed to be issued for the (c)(4) class. *See Harris v. Medical Transp. Mgmt., Inc.*, No. 17 Civ. 01371, 2022 WL 1908822, at *2 (D.D.C. June 3, 2022) (citing Pls.

Mem. Opp. Mot. Stay Pending Appeal at 6–7, No. 17 Civ. 01371 (D.D.C. April 8, 2022), Dkt. 213).[3]

That cannot be correct. Because this issue class should have been handled as a Rule 23(b)(3) class type, all of the procedural protections of such a class apply. That includes notice of class certification. *Compare* FED. R. CIV. P. 23(c)(2)(A) ("For any class certified under Rule 23(b)(1) or (b)(2), the court *may* direct appropriate notice to the class."), *with* FED. R. CIV. P. 23(c)(2)(B) ("For any class certified under Rule 23(b)(3) * * * the court *must* direct to class members the best notice that is practicable under the circumstances[.]") (emphases added).

Rule 23(b)(3)'s notice mandate means what it says, and for good reason. Because the resolution of the action will bind absent class members, basic principles of due process require that they be notified that their individual claims are being resolved, and that they may opt out of the action if they so choose. *See Dukes*, 564 U.S. at 363; *Phillips Petrol. Co. v. Shutts*, 472 U.S. 797, 812 (1985).

So if the district court certifies the issue class under Rule 23(b)(3) on remand, it must direct "the best notice that is practicable" as part of any certification order. *See* FED. R. CIV. P. 23(c)(2)(B).

---

[3] Following oral argument in this court, the Drivers asked the district court to direct notice to the class, a request that MTM opposed. *See* Pls. Mot. Amend the Cert. Order & Direct Notice to the Class, *Harris*, No. 17 Civ. 01371 (D.D.C. Nov. 10, 2022), Dkt. 228; Mem. Opp. to Pls. Mot. to Amend/Correct Cert. Order & Direct Notice to the Class, *Harris*, No. 17 Civ. 01371 (D.D.C. Nov. 23, 2022), Dkt. 229. That motion remains pending.

**V**

MTM separately urges this court to exercise pendent appellate jurisdiction and reverse the district court's denial of its motion to decertify the FLSA collective. We decline to review that portion of the district court's decision.

**A**

The FLSA sets out certain wage-and-hour protections for eligible employees. For example, covered employers must pay a minimum hourly wage and provide overtime pay to employees for hours worked beyond 40 hours a week. 29 U.S.C. §§ 206, 207. The FLSA also authorizes aggrieved employees to file suit to enforce their rights under the statute. *See id.* § 216.

As relevant here, the FLSA authorizes "collective action" litigation. An FLSA collective action may be maintained "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). To be bound by the judgment or to recover in an FLSA collective action, an employee must affirmatively opt into the litigation by filing written consent with the district court. *See id.*; *Lindsay v. Government Emps. Ins. Co.*, 448 F.3d 416, 419 (D.C. Cir. 2006).

Separate from its class action ruling, the district court ruled that the Drivers' collective action to enforce the wage provisions of the FLSA was proper and could go forward, denying MTM's motion to decertify the FLSA class.

**B**

This court has jurisdiction to review "final decisions" of the district courts, 28 U.S.C. § 1291, as well as certain types of interlocutory orders, *see, e.g.*, *id.* §§ 158(d)(2)(A); 1292; 18 U.S.C. § 3731; FED. R. CIV. P. 23(f).

The district court's denial of MTM's motion to decertify the FLSA collective is a nonfinal order that is not within our ordinary jurisdiction because it does not terminate the action on the merits. *See Gelboim v. Bank of America Corp.*, 574 U.S. 405, 408–409 (2015) ("A 'final decision' is one 'by which a district court disassociates itself from a case.'") (quoting *Swint v. Chambers County Comm'n*, 514 U.S. 35, 42 (1995)); *Catlin v. United States*, 324 U.S. 229, 233 (1945) (A final decision "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment."). Nor does any law authorize the interlocutory review of collective action determinations under the FLSA.

So to review the district court's denial of MTM's motion to decertify the FLSA collective, we would have to exercise pendent appellate jurisdiction over the FLSA dispute as part of our review under Rule 23(f) of the separately certified issue class.

Pendent appellate jurisdiction operates "when, in the course of reviewing an order from which an appeal is within its jurisdiction," an appellate court also reviews "another order that, while part of the same case or controversy, would not otherwise be within its statutory jurisdiction." *Gilda Marx, Inc. v. Wildwood Exercise, Inc.*, 85 F.3d 675, 678 (D.C. Cir. 1996). Because interlocutory appeals are generally disfavored and neither a statute nor rule specifically authorizes the use of pendent jurisdiction, we exercise such jurisdiction "sparingly"

and only "when substantial considerations of fairness or efficiency demand it." *See id.* at 678–679; *id.* at 680 (finding "no occasion to take the disfavored step of exercising pendent jurisdiction" "[w]ithout a reason to believe that the interests of judicial economy and fairness to the parties would be served") (internal quotation marks and citation omitted).

Pendent jurisdiction might be warranted, though, "when the nonappealable order is 'inextricably intertwined' with the appealable order, or when review of the former is 'necessary to ensure meaningful review of the latter.'" *Gilda Marx*, 85 F.3d at 679 (quoting *Swint*, 514 U.S. at 51). Yet even if that standard is met, the ultimate decision whether to grant pendent appellate jurisdiction lies within the court's discretion. *See Kilburn v. Socialist People's Libyan Arab Jamahiriya*, 376 F.3d 1123, 1136 (D.C. Cir. 2004) ("In the final balance, whether or not we have authority to exercise pendent appellate jurisdiction in this case, there is no question that we have discretion to decline to do so.").

On this record, an exercise of pendent appellate jurisdiction is not warranted for three reasons.

*First*, because collective actions differ materially from Rule 23 class actions and because they each enforce different substantive claims, our review of the district court's collective action ruling would stand distinct from—not be intertwined with—our Rule 23(f) review of the class action certification order. Which means that appellate review of the former is not at all necessary to our review of the latter. Rule 23 actions, in fact, "are fundamentally different from collective actions under the FLSA[.]" *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 74 (2013). Our analysis of Rule 23's application to the issue class certified by the district court has little relevant overlap with the decision whether or not to allow the FLSA

collective action, which is not an issue-specific action and turns on a distinct legal analysis. The collective action covers all identified FLSA issues as a group, not issue by issue.

In addition, the two group litigation mechanisms diverge in terms of their substantive requirements. While Rule 23 mandates several prerequisites for class certification and management of the litigation—including, for example, Rule 23(b)(3)'s predominance and superiority requirements—the FLSA only provides that party plaintiffs must be "similarly situated" to certify a collective. Those are quite different questions, requiring different textual and precedential analyses. *See Myers v. Hertz Corp.*, 624 F.3d 537, 555–556 (2d Cir. 2010) (declining to exercise pendent appellate jurisdiction over FLSA decision because it was not inextricably intertwined with Rule 23; rather, Section 216(b)'s "similarly situated" inquiry is "quite distinct from the question whether plaintiffs have satisfied the much higher threshold" of Rule 23(b)(3) predominance).

Nor does the collective action implicate the due process concerns underlying the Rule 23(b)(3) issue classes and their notice requirements. While Rule 23(b)(3) presumes that absent class members are represented in the litigation, unless they opt out, FLSA actions only include individuals who affirmatively opt into the litigation. *Compare* FED. R. CIV. P. 23(c)(2)(B) *and* FED. R. CIV. P. 23(e)(4), *with* 29 U.S.C. § 216(b); *see also Lindsay*, 448 F.3d at 419 ("Unlike the procedure set out in 29 U.S.C. § 216(b), Rule 23[(b)(3)] class certification requires notice to all potential class members that they must affirmatively decline to join ('opt out [of]') the lawsuit if they do not want to be class members.").

These "significant differences between certification under [Rule] 23 and the joinder process under [Section] 216(b)[,]"

*Genesis Healthcare Corp.*, 569 U.S. at 71 n.1, illustrate how review of the collective action certification and the Rule 23 class certification share little common ground and, instead, "are fundamentally different creatures." *Reinig v. RBS Citizens, N.A.*, 912 F.3d 115, 131 (3d Cir. 2018).

MTM argues that pendent appellate jurisdiction is warranted because the district court described the question of whether to certify an issue class in the same terms as the question of whether to decertify the FLSA collective—namely, as hinging on whether it would "materially advance the litigation[.]" *See Harris IV*, 2021 WL 3472381, at *9 (quoting *McLaughlin*, 522 F.3d at 234).

That is not sufficient. This court is not bound by the district court's characterization of the questions before it. Rather, "it is the 'issues presented' to this Court that must be 'inextricably intertwined' for pendent appellate jurisdiction to be properly exercised, not the issues presented to the district court." *Myers*, 624 F.3d at 556 (quoting *CFTC v. Walsh*, 618 F.3d 218, 225 n.3 (2d Cir. 2010)). The class action analysis undertaken on this appeal has no relevant overlap with the collective action objections that MTM raises.

*Second*, several considerations affirmatively weigh against the exercise of pendent appellate jurisdiction. *See generally Gilda Marx*, 85 F.3d at 679. To begin, the FLSA appeal concerns a different cause of action altogether from the Rule 23(f) petition. *See id.* at 678. What is more, the FLSA appeal would require us to set out a standard for "similarly situated," which this circuit has not yet done, and which would require

wading into a circuit conflict.[4]  Given that, granting pendent appellate review would add weighty and entirely distinct issues to our interlocutory review—issues that have no overlap with the Rule 23 question of issue-class certification.

Review of the FLSA order would also be interlocutory, which further weighs against exercising pendent appellate jurisdiction.  *See Gilda Marx*, 85 F.3d at 679.  Granting review would compound the departure from ordinary principles of finality.  *See id.*  And because the issues to review have no overlap with the Rule 23 inquiry, the disruption to district court proceedings would be doubled.  Plus, were we to review the FLSA question, we would be "reaching an issue that might be

---

[4] *Compare, e.g.*, *Scott*, 954 F.3d at 516 ("[T]o be 'similarly situated' means that named plaintiffs and opt-in plaintiffs are alike with regard to some material aspect of their litigation."), *and Campbell*, 903 F.3d at 1114 ("[P]arty plaintiffs must be alike with regard to some *material* aspect of their litigation."), *with Thiessen v. General Elec. Cap. Corp.*, 267 F.3d 1095, 1103 (10th Cir. 2001) (weighing "several factors, including (1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; [and] (3) fairness and procedural considerations") (internal quotation marks omitted); *Anderson v. Cagle's, Inc.*, 488 F.3d 945, 953 (11th Cir. 2007) ("[T]he similarities necessary to maintain a collective action under § 216(b) must extend beyond the mere facts of job duties and pay provisions.") (internal quotation marks and citation omitted); *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1262 (11th Cir. 2008) ("[T]he district court must consider whether the defenses that apply to the opt-in plaintiffs' claims are similar to one another or whether they vary significantly.") (citing *Anderson*, 488 F.3d at 954 n.8); *and Halle v. West Penn Allegheny Health Sys. Inc.*, 842 F.3d 215, 226 (3d Cir. 2016) ("Our Court * * * consider[s] all relevant factors and mak[es] a determination on a case-by-case basis as to whether the named plaintiffs have satisfied this burden by a preponderance of the evidence.").

mooted or altered by subsequent district court proceedings." *See id.*

*Third*, the district court declined to certify the collective action question for interlocutory review under 28 U.S.C. § 1292(b). *Harris V*, 2021 WL 5446829, at *4. The court explained that MTM had failed to demonstrate "that interlocutory appeal will materially advance the disposition of the litigation." *Id.* While the district court's Section 1292(b) judgment does not control our pendent jurisdiction decision, the district court's expert judgment on trial management is a relevant consideration weighing against an exceptional exercise of pendent jurisdiction. *See Swint*, 514 U.S. at 47 ("Congress * * * chose to confer on district courts first line discretion to allow interlocutory appeals.").

For those reasons, pendent appellate jurisdiction would not be appropriate in this case.

## VI

Because the district court failed to determine whether the classes it certified met Rule 23(a) and (b)'s prerequisites, we remand the order certifying an issue class under Federal Rule of Civil Procedure 23(c)(4) for further consideration consistent with this opinion. We decline to exercise pendent appellate jurisdiction over the district court's denial of decertification of the FLSA collective.

*So ordered.*