In the

# United States Court of Appeals

### For the Seventh Circuit

———————

No. 23-3166

LASHON JACKS, *et al.*,

*Plaintiffs-Appellants*,

*v.*

DIRECTSAT USA, LLC, *et al.*,

*Defendants-Appellees*.

———————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:10-cv-01707 — **Martha M. Pacold**, *Judge*.

———————

ARGUED MAY 24, 2024 — DECIDED OCTOBER 3, 2024

———————

Before EASTERBROOK, KIRSCH, and LEE, *Circuit Judges*.

LEE, *Circuit Judge*. In 2010, three former satellite service technicians filed this class action suit against their employer, DirectSat USA, LLC, alleging violations of the Illinois Minimum Wage Law (IMWL) and the Fair Labor Standards Act (FLSA). Plaintiffs maintain that DirectSat failed to compensate them for the time they spent performing work-related tasks in excess of forty hours per week. In June 2012, pursuant to Fed. R. Civ. P. 23(b)(3), the district court certified a class of

full-time Illinois DirectSat satellite technicians who had worked at DirectSat between July 12, 2008, and February 9, 2010. But, after two other courts decertified similar classes in other actions, the district court vacated its previous certification order and certified a Rule 23(c)(4) issue class to resolve fifteen questions related to DirectSat's liability.

The case was reassigned to another district judge in August 2019. Then, a few months before the case was scheduled for trial, the district court decertified the Rule 23(c)(4) class as well. Plaintiffs settled their individual claims but reserved their right to appeal the decertification decision, which they did. Because we do not see a class action under Rule 23(c)(4) as a superior method of adjudicating Plaintiffs' controversy, we affirm the district court's decertification of the class.

## I.   Background

### A.  Facts

DirectSat (owned by parent company UniTek USA, LLC) installs and services residential satellite dishes throughout Illinois. To perform this work, it employs a number of satellite service technicians. DirectSat assigns its technicians a series of work orders to complete over the course of a workday, and its technicians travel to and from customers' homes to complete these tasks using company-owned vehicles.

DirectSat compensates its technicians on a piece-rate basis—that is, so many dollars per task—rather than at a fixed hourly rate. It also requires technicians to maintain weekly timesheets to record the daily hours worked from the time they arrive at the work site (which can be DirectSat's warehouse or the first job site if the technician is going directly from home) until they complete their final job for the day.

DirectSat technicians fill out the timesheets by hand and submit them to DirectSat's payroll department. Broadly speaking, between the total amount a technician earns from completing tasks and the total hours he works per week, DirectSat calculates the technician's hourly wage to ensure that he is paid the legal minimum.

Plaintiffs Lashon Jacks, Morrie Bell, and Errick Rhodes are all Cook County residents who worked as hourly, non-exempt DirectSat technicians during the period relevant to this suit. When they filed the complaint, Defendant Jay Heaberlin was DirectSat's Vice President of Operations, while Defendants Lloyd Riddle and Dan Yannantuono at various points served as the company's Chief Executive Officer. According to Plaintiffs, all three individuals were responsible for starting up DirectSat's Illinois operations in 2006 and were involved in DirectSat's day-to-day operations.

### B. Procedural Background

This case has a rather lengthy procedural history. Plaintiffs (both individually and on behalf of all others similarly situated) filed this class action against DirectSat, UniTek, Heaberlin, Riddle, and Yannantuono (collectively, Defendants) on February 9, 2010. They allege Defendants maintained policies and practices that failed to compensate them in violation of the IMWL, 820 Ill. Comp. Stat. § 105/1 *et seq.*, Illinois common law, and the FLSA, 29 U.S.C. § 201 *et seq.* According to Plaintiffs, Defendants required them to work more than forty hours per week without overtime pay and encouraged them to perform certain tasks off the clock which negatively impacted their eligibility for overtime pay. These activities included maintaining vehicles, mapping directions for service calls, receiving and reviewing work assignments, providing

customers estimated arrival times, and loading equipment into their vehicles before going to a job site.

Plaintiffs originally filed this action in Illinois state court. Defendants timely removed the action to the district court, where it was assigned to Judge Joan Gottschall.

### i.  Original Certification

In June 2012, Judge Gottschall certified an IMWL class under Rule 23(b)(3) composed of "[a]ll individuals who were employed or are currently employed by DirectSat in the state of Illinois as technicians or other similarly titled positions at any time between June 12, 2008, and February 9, 2010."[1] The district court acknowledged that individual factual questions exist as to whether and to what extent technicians performed off-the-clock work. Nonetheless, it concluded that common questions regarding whether DirectSat's top-level corporate policies were lawful under the IMWL predominated over individual ones.

About eight months after Judge Gottschall certified the class, we affirmed a district court's decertification decision in a similar case named *Espenscheid v. DirectSat USA*, 705 F.3d 770 (7th Cir. 2013). The plaintiffs in *Espenscheid* were also DirectSat service technicians and put forth facts and legal theories nearly identical to those here. In *Espenscheid*, we observed that DirectSat's piece-rate compensation system caused individual class members to perform different tasks and earn different hourly wages. *Id.* at 773. This variance, we noted, would later require thousands of individual evidentiary hearings to determine each class member's damages. *Id.*

---

[1] Plaintiffs have brought their FLSA claims on an individual basis.

Anticipating the issue, the *Espenscheid* plaintiffs proposed to calculate damages classwide by using the damages of forty-two members as "representative" evidence. *Id.* at 774. We rejected this approach, reasoning that the known variance among class members would result in a windfall for some and a shortfall for others and that the piece-rate system further complicated the calculation of damages. *Id.* Because class counsel was "incapable of proposing a feasible litigation plan" without the use of representative data, we affirmed the district court's decision to decertify the IMWL class. *Id.* at 776.

### ii. Partial Certification After *Espenscheid*

Following our decision in *Espenscheid*, Defendants moved to decertify the Rule 23(b)(3) class on July 8, 2014. The court granted Defendants' motion in part on March 10, 2015. It concluded that, given our holding in *Espenscheid*, Plaintiffs could no longer rely on representative evidence to prove classwide damages. A few months later, after seeking input from the parties, the district court certified fifteen liability-related issues to proceed on a classwide basis under Rule 23(c)(4). A summary of these issues is necessary.

Issue 1 asks whether DirectSat defined a technician's workday to be the time between his arrival at the first job and the completion of the last job (we will call this the "Workday"). Issue 2 considers whether a technician should be paid for commuting time (that is, time spent driving from the technician's home to the first job site and later driving back home from the last job site). Along similar lines, Issue 3 asks whether the Employee Commuter Flexibility Act (ECFA), 29 U.S.C. § 254(a)(2), precludes compensation for such commuting time.

Issues 4 through 13 query whether a technician should be
compensated for doing certain work-related tasks when those
tasks are performed before the technician arrives at the first
job site or after he completes the last job of the day, *i.e.*, outside
the Workday. These tasks are: (4) maintaining his work-
issued vehicle; (5) receiving work assignments; (6) loading
and unloading equipment into or out of the work vehicle; (7)
receiving work orders that detailed customer names and
contact information, job locations, start times, parts needed,
and other details; (8) looking up directions and planning
routes; (9) "pre-calling" customers to provide an estimated
time of arrival; (10) attending weekly meetings; (11) picking
up equipment from the warehouse; (12) completing
paperwork; (13) building satellite dishes; and (14) removing
tools and equipment from the work vehicle.

And, finally, to the extent that technicians did in fact per-
form the tasks described above outside the Workday, Issue 15
asks whether DirectSat directed them to record these activi-
ties on their timesheets.

On September 12, 2016, Plaintiffs moved for partial sum-
mary judgment on two of the issues: (1) whether Plaintiffs
should have been compensated for commuting time (Issue 2),
and (2) whether the ECFA disallowed compensation for that
time (Issue 3). The court denied summary judgment as to Is-
sue 2, finding disputed issues of fact, but granted the motion
as to Issue 3, ruling that the ECFA did not apply to Plaintiffs'
IMWL claims.

The case proceeded, and on June 24, 2019, Defendants filed
their own motion for summary judgment. While the motion
was pending, the case was reassigned to Judge Martha Pacold,
who subsequently granted the motion in part and denied it in

part. She granted the motion for all Defendants as to Plaintiffs' Illinois common law claims. As for Plaintiffs' FLSA and IMWL claims, she ruled in favor of Defendant Riddle, but denied the motion as to Defendants Yannantuono and Heaberlin. *Id.*

### iii. Decertification and Settlement

The district court then scheduled the trial for late July 2022 and directed Plaintiffs to submit a preliminary trial plan describing how they planned to try the fourteen remaining class issues to the jury. Plaintiffs submitted their plan in January 2022, and, later that month, Defendants responded with a second motion to decertify the class.

This time, the district court granted the decertification motion in its entirety. When announcing its ruling, the court first addressed the impact of Judge Gottschall's prior Rule 23(c)(4) certification order, concluding that, because "Rule 23 grants courts the discretion to reconsider certification at any point before final judgment," it was not bound by the prior district judge's certification decision.

Turning to the merits of the motion, the court concluded that "class treatment [was] not warranted because defendants' liability [was] incapable of classwide resolution." The "principal problem with continuing the case as a class action," the court continued, was "that defendants' liability [could not] be determined on a classwide basis, and, therefore, the class [did] not meet Rule 23(b)(3)'s commonality and predominance requirements."

By way of explanation, the court observed that the IMWL requires an employer to pay its employees time-and-a-half for any time worked over forty hours a week. 820 Ill. Comp. Stat.

105/4a. Thus, not only was it "not possible to separate the question of liability from the question of damages," but there was "no feasible way" to determine liability for the class as a whole. This was so, because there was "too much variance in the amount of time DirectSat technicians spent working overtime and the work they were doing in that overtime." And, while Plaintiffs planned to call three to twelve class members at trial, like the plaintiffs in *Espenscheid*, they made no showing as to how the experiences of these individuals were representative of the entire class.

The district court recounted numerous examples of variances among class members. For instance, the amount of time technicians spent on work-related tasks outside the Workday "varied greatly." Some said it took fifteen minutes to prepare satellite dishes, while others said it took two hours. Some spent five minutes mapping out directions, while others took forty-five minutes. Furthermore, technicians were all over the board on the types of tasks they performed outside the Workday. And the piece-rate compensation system only added to the difficulty in performing any overtime calculations on a classwide basis.

The reasons that technicians had to work outside the Workday also varied depending principally on their particular supervisors. For instance, it was the supervisors who determined their work schedules, and supervisors differed in how they trained technicians to fill out time sheets, how they instructed technicians on which tasks to record, and whether they instructed technicians to record overtime work at all.

Due to these many variances, the court noted, the question of liability could not "be answered in the aggregate, particularly here where the pay system makes it so that the

experience of one plaintiff is not necessarily representative of another and where individual supervisors had discretion in directing plaintiffs how to fill out their time sheets and what activities to record." In the court's eyes, the case was no different from *Espenscheid*.

Moving on, the district court noted another barrier to certification—"the certified issues would not generate common answers apt to drive the resolution of the litigation." Quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011), the court noted that commonality and predominance under Rule 23(b)(3) require more than the mere existence of common questions; they must resolve an issue that is central to the validity of the claims in "one stroke." But, in the court's view, the vast number of individual issues destroyed predominance. So much so that a trial on the fourteen remaining common issues would leave Plaintiffs with the prospect of 800 follow-on trials to decide both liability and damages and, thus, in "no better a position than before."

The district court later echoed this concern when addressing Rule 23(b)(3)'s manageability requirement, noting that to show manageability, "Plaintiffs primarily needed to show how common issues of fact or law predominate over issues affecting only individual class members." The court continued: "Here, given the nature of plaintiffs' IMWL claim, that would require plaintiffs to establish that resolving the certified issues would resolve the issue of defendants' liability in one stroke. Plaintiffs have not met that burden."

Following decertification, Defendants and each of the named Plaintiffs reached a settlement agreement. Under the agreement, Plaintiffs released their personal claims against Defendants in exchange for $275,000 (plus over $100,000 for

attorneys' fees and costs). The agreement expressly reserved Plaintiffs' right to appeal the district court's final decertification order. The court entered a consent decree memorializing these terms and dismissing the case with prejudice on October 4, 2023. Plaintiffs then appealed.[2]

## II. Analysis

Under Rule 23, "a district court has broad discretion to determine whether certification of a class-action lawsuit is appropriate." *Chavez v. Ill. State Police*, 251 F.3d 612, 629 (7th Cir. 2001) (quoting *Mira v. Nuclear Measurements Corp.*, 107 F.3d 466, 474 (7th Cir. 1997)). We therefore review a district court's denial of class certification for abuse of discretion. *McFields v. Dart*, 982 F.3d 511, 515 (7th Cir. 2020) (citing *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012)). An abuse of discretion "can occur when a district court commits legal error or makes clearly erroneous factual findings." *Bell v. PNC Bank, Nat'l Ass'n*, 800 F.3d 360, 373 (7th Cir. 2015). We have described the standard of review at this juncture as "deferential, but exacting." *Id.* "A class may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites for class certification have been met." *Id.* (cleaned up) (quoting *CE Design, Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 723 (7th Cir. 2011)).

Plaintiffs bear the burden of demonstrating that they meet Rule 23's certification requirements by a preponderance of the

---

[2] We have previously noted that a putative class representative, who may be entitled to receive an incentive award, retains standing to pursue an appeal of an order denying class certification despite settling with the defendant. *See Espenscheid v. DirectSat USA, LLC*, 688 F.3d 872, 876 (7th Cir. 2012).

evidence. *Id.* (citing *Messner*, 669 F.3d at 811). Similarly, when a defendant moves to decertify a class, "a district court must make whatever factual and legal inquiries are necessary to ensure that requirements for class certification are satisfied before deciding whether a class should [remain] certified, even if those considerations overlap the merits of the case." *Am. Honda Motor Co. v. Allen*, 600 F.3d 813, 815 (7th Cir. 2010).

### A. Preliminary Questions

Before proceeding to the merits, we address two preliminary arguments Plaintiffs raise on appeal. First, Plaintiffs argue that the district court erred by refusing to defer to the prior judge's Rule 23(c)(4) certification order. Second, they contend that the district court impermissibly made findings that go to the merits of their claim, something Rule 23 forbids. We will take these in turn.

In Plaintiffs' view, Judge Pacold should have deferred to Judge Gottschall's ruling certifying fifteen issues for trial under Rule 23(c)(4). For support, they point to *Williams v. Commissioner of Internal Revenue*, which provides that "[l]itigants have a right to expect that a change in judges will not mean going back to square one." 1 F.3d 502, 503 (7th Cir. 1993).

If this were a typical case, Plaintiffs might be right. But, because Plaintiffs are seeking class certification, this case is governed by Rule 23. And Rule 23(c)(1)(C) expressly provides that "[a]n order that grants or denies class certification may be altered or amended before final judgment." Fed. R. Civ. P. 23(c)(1)(C). Drawing on this broad authority, "the district court has the power at any time before final judgment to revoke or alter class certification if it appears that the suit cannot proceed consistent with Rule 23's requirements." *All. to End*

*Repression v. Rochford*, 565 F.2d 975, 977 (7th Cir. 1977). Indeed, such an approach "makes sense in light of our repeated assertions that district courts have wide discretion in managing class and collective actions." *Weil v. Metal Techs., Inc.*, 925 F.3d 352, 357 (7th Cir. 2019) (citing *Alvarez v. City of Chi.*, 605 F.3d 445, 449 (7th Cir. 2010)). And a previous order granting or denying certification (by the same judge or a prior one) does not limit this discretion in any way.

Next, Plaintiffs argue the district court erred by encroaching into merits issues when deciding the appropriateness of continued certification. Specifically, they say the district judge impermissibly made findings as to (1) whether individual supervisors exercised discretion in directing technicians how to fill out their time sheets, and (2) whether supervisors decided which activities technicians could record.

Plaintiffs are correct that the "default rule is that a court may not resolve merits questions at the class certification stage." *Bell*, 800 F.3d at 376. But, at the same time, "[m]erits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.*

This is precisely what the Supreme Court did in *Wal-Mart*. There, a putative class of female Wal-Mart employees alleged the company discriminated against them on the basis of their sex in violation of Title VII by operating under a general policy of discrimination. *See Wal-Mart*, 564 U.S. at 352. The central issue at class certification was whether the putative class met Rule 23(a)(2)'s commonality requirement. And, because the commonality question "necessarily overlap[ped] with respondents' merits contention that Wal-Mart engages in a pattern or practice of discrimination," the Supreme Court

examined the putative class's contention that Wal-Mart had engaged in a general policy of discrimination. *Id.* (emphasis removed). The justices reminded us that "sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *Id.* at 351 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982)).

The district court here did exactly that. To determine whether class certification was proper, the court had to consider evidence that overlapped with the merits. It noted that DirectSat did have some uniform policies related to timekeeping. But it also pointed to evidence showing that individual supervisors often dictated how their technicians recorded their time. And, given the breadth of an individual supervisor's discretion, the court determined there was too much variation among technicians to resolve liability on a classwide basis. Because the district court only considered merits issues to the extent necessary to determine whether Plaintiffs met the requirements for class certification, it did not commit reversible error when doing so. *See Bell*, 800 F.3d at 376.

### B. The Decertification Order

We now turn to the heart of this appeal. Rule 23 governs class actions. A party seeking class certification must demonstrate first that "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

Once it satisfies Rule 23(a), a party seeking certification can proceed along one of several paths. Perhaps the most

familiar is the certification of a class with respect to a claim under Rule 23(b). And, where the claim asks for damages, a party seeking certification can invoke Rule 23(b)(3), which allows certification where "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Another available route is the certification of a class with respect to specific issues under Rule 23(c)(4). This rule provides that, "[w]hen appropriate, an action may be brought or maintained as a class action with respect to particular issues." Fed. R. Civ. P. 23(c)(4). And this is the route that Plaintiffs took (and Judge Gottschall approved) after our decision in *Espenscheid*.

The interaction between Rule 23(b)(3) and Rule 23(c)(4) is not one that we have directly addressed. The key question is this—when seeking certification of an issue class under Rule 23(c)(4) in a case requesting damages, must a party show that common issues predominate in the resolution of the entire claim, or is it enough that common issues predominate as to each issue to be certified? Our sister circuits have taken different approaches.

The Fifth Circuit has limited Rule 23(c)(4) classes to instances where "the cause of action, taken as a whole," satisfies Rule 23(b)(3)'s predominance requirement. *Corley v. Orangefield Indep. Sch. Dist.*, 152 F. App'x. 350, 355 (5th Cir. 2005); *see Castano v. Am. Tobacco Co.*, 84 F.3d 734, 745 n.21 (5th Cir. 1996) (stating that any other approach would "eviscerate the

predominance requirement" and would result in "certification in every case where there is a common issue").

By contrast, the Second, Third, Fourth, Sixth, and Ninth Circuits permit certification under Rule 23(c)(4) so long as common questions predominate in resolving the individual issues to be certified. *See In re Nassau Cnty. Strip Search Cases*, 461 F.3d 219, 226 (2d Cir. 2006) ("[A] court may employ Rule 23(c)(4) when it is the only way that a litigation retains its class character, *i.e.*, when common questions predominate only as to the 'particular issues' of which the provision speaks.") (cleaned up); *Russell v. Educ. Comm'n for Foreign Med. Graduates*, 15 F.4th 259, 274 (3d Cir. 2021); *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 441 (4th Cir. 2003); *Martin v. Behr Dayton Thermal Products LLC*, 896 F.3d 405, 413 (6th Cir. 2018); *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).

The D.C. Circuit has staked out a middle ground. *See Harris v. Med. Transp. Mgmt., Inc.*, 77 F.4th 746, 760–61 (D.C. Cir. 2023). Like the Second, Third, Fourth, Sixth, and Ninth Circuits, it requires district courts to "ensure that the common questions within the certified issues predominate over any individual ones." *Id.* at 760. But as part of the predominance analysis, the D.C. Circuit also requires district courts to "evaluate the relationship any certified issues have as to the dispute as a whole" to ensure that a certified issue "encompass[es] a reasonably and workably segregable aspect of the litigation."[3] *Id.*

---

[3] For example, the D.C. Circuit says a Rule 23(c)(4) class might be appropriate "where common questions predominate as to (i) the determination of liability, giving rise to a liability-only issue class; (ii) proof of a key

Agreeing with the Second, Third, Fourth, Sixth, and Ninth Circuits, we hold that, as part of satisfying its burden under Rule 23, a party seeking certification of an issue class under Rule 23(c)(4) must show that common questions predominate in the resolution of the specific issue or issues that are the subject of the certification motion and not as to "the cause of action, taken as a whole." *Corley*, 152 F. App'x at 355.

We ground this conclusion in the following. First, the text of Rule 23(c)(4) supports this conclusion: "When appropriate, an action may be brought or maintained as a class action *with respect to particular issues*." Fed. R. Civ. P. 23(c)(4) (emphasis added); *see* Fed. R. Civ. P. 23(c)(4) advisory committee's note to 1966 amendment ("This provision recognizes that an action may be maintained as a class action as to particular issues only.").

Second, as the Second Circuit points out, the 2006 version of the rule expressly mandated that the other requirements in Rule 23 (including Rule 23(b)(3)) be applied only after the issues appropriate for certification have been identified. *See In re Nassau Cnty.*, 461 F.3d at 226 (noting Rule 23(c)(4)'s language that "an action may be brought or maintained as a class action *with respect to particular issues … and* the provisions of this rule shall *then* be construed and applied accordingly") (emphases in original). And, while the 2007 amendment to Rule 23(c)(4) deleted the second clause, this modification was not intended to substantively change the rule. *See* Fed. R. Civ.

---

element of a cause of action, such that there is an issue class for that element; or (iii) another aspect of the controversy that, if decided, would materially advance the fair resolution of the litigation." *Harris*, 77 F.4th at 760–61.

P. 23(c)(4) advisory committee's note to 2007 amendment ("These changes are intended to be stylistic only.").

Finally, following the Fifth Circuit's approach would render Rule 23(c)(4) superfluous, something we try strenuously to avoid. *See Loughrin v. United States*, 573 U.S. 351, 358 (2014). In *Castano*, the Fifth Circuit viewed Rule 23(c)(4) as merely a "housekeeping rule that allows [a court] to sever the common issues for a class trial" after it has determined that the requirements of Rule 23(b)(3) have been satisfied as to the entire cause of action. 84 F.3d at 745 n.21. But this would require "a court considering the manageability of a class action—a requirement for predominance under Rule 23(b)(3)(D)—to pretend that subsection (c)(4)—a provision specifically included to make a class action more manageable—does not exist until after the manageability determination is made." *In re Nassau Cnty.*, 461 F.3d at 226 (cleaned up) (quoting *Gunnells*, 348 F.3d at 439). Indeed, it is well-established that a court has the authority to manage a case by, among other things, severing issues for trial. *See* Fed. R. Civ. P. 42(b) ("For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues."). It is difficult to see why Rule 23(c)(4) would need to restate this well-established principle.

Thus, a district court can certify an issue under Rule 23(c)(4) so long as the resolution of that issue is driven predominantly by common questions. But this is not all. Rule 23(b)(3) also requires that "a class action [be] superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Thus, in addition to demonstrating that common questions predominate as to each issue to be certified, a party seeking certification under

Rule 23(c)(4) must show that certifying the proposed issues would be the most practical and efficient way to resolve the litigation. This way, as the Sixth Circuit observed, the superiority requirement "functions as a backstop against inefficient use of Rule 23(c)(4)" because it "ensures that courts will not rely on issue certification where there exist only minor or insignificant common questions." *Martin*, 896 F.3d at 413; *accord Harris*, 77 F.4th at 762–63; *In re Nassau Cnty.*, 461 F.3d at 227–28; *Valentino*, 87 F.3d at 1234–35.

Returning to the case at hand, we take issue with the district court's ruling for two reasons. First, rather than looking to see whether common questions predominated as to each of the remaining fourteen certified issues, the court examined whether common questions predominated as to the entire cause of action. As discussed, this was a flawed approach.

Second, neither we nor the Supreme Court has held that issues certified pursuant to Rule 23(c)(4) must resolve *all liability* in one fell swoop, and Rule 23(c)(4)'s text contains no such limitation. Indeed, we have rejected such reasoning in similar cases. *See Beaton v. Speedy PC Software*, 907 F.3d 1018, 1029–30 (7th Cir. 2018) ("Speedy misreads Supreme Court precedent in arguing that liability with regard to all class members must be resolved in a single stroke.") (citing *Wal-Mart*, 564 U.S. at 350); *Bell*, 800 F.3d at 380 (stating that Rule 23(b)(3) "does not require a plaintiff seeking class certification to prove that each element of her claim is susceptible to class-wide proof") (quoting *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 469 (2013)); *Pella Corp. v. Saltzman*, 606 F.3d 391, 394 (7th Cir. 2010) (per curiam) (affirming certification of a class to determine whether the class members' Pella-

brand windows were defective, while leaving causation and damages for individual determination).

But our work is not done. "[W]e may affirm on any ground supported by the record, so long as the issue was adequately raised before the district court." *White v. United Airlines, Inc.*, 987 F.3d 616, 620 (7th Cir. 2021) (quoting *Fid. & Deposit Co. of Md. v. Edward E. Gillen Co.*, 926 F.3d 318, 324 (7th Cir. 2019)). Our routes may differ, but we arrive at the same place. Based on this record, we do not believe that proceeding to trial on the fourteen certified issues would be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Several unique facts necessitate this conclusion. First, as the district court rightly observed, DirectSat's piece-rate compensation method raises many more individualized issues as compared to the straightforward forty-hour workweek commonly used by other employers. For example, DirectSat technicians did not start and end their work at set times, and the amount of time they spent at work varied depending on the day and number of jobs, as did the tasks they performed (which, of course, determined their total pay). Furthermore, technicians differed in whether they performed the tasks described in Issues 4 through 13 outside the Workday and, if so, how much time they spent doing them. What is more, the record shows that individual supervisors had an outsized role in determining what work technicians received and how they entered and accounted for their time.

As a result, this is not a case where liability and damages can be determined by a simple formula or uncomplicated follow-on proceedings. To the contrary, we agree with the district court that determining liability and damages would

necessitate hundreds of separate trials to evaluate evidence regarding the nature and scope of an individual technician's work and the impact of his particular supervisor on the type of tasks assigned and how the technician recorded his time—not to mention the individualized piece-rate calculations at the center of this dispute.

Thus, even if the fourteen certified issues were answered, doing so would not materially advance Plaintiffs' claims given the magnitude of what remains. As a result, we conclude that a class action, as currently certified, is not a superior device to resolve this controversy and affirm the district court's decision to decertify this case, albeit on slightly different grounds.

## III.  Conclusion

For the foregoing reasons, the judgment of the district court is AFFIRMED.

EASTERBROOK, *Circuit Judge*, concurring. Plaintiffs settled their claims, plus those of eight other persons who were pursuing similar litigation in state court. The settlement included costs and attorneys' fees. So plaintiffs no longer have an interest in the outcome. Nonetheless they have appealed and ask us to direct the district court to certify a class action. Some other assertedly injured person might intervene as a potential class representative, but none has done so, and plaintiffs' own claims have been extinguished. What can be left of this litigation?

Plaintiffs' answer is that, if a class is certified and prevails, they might receive incentive awards. Yet such awards would not recompense any harm done them by DirectSat. Incentive awards instead amount to fees for serving as other persons' representatives. My statement respecting the petition for rehearing en banc in *Scott v. Dart*, 108 F.4th 931 (7th Cir. 2024), explains why people who have settled their own claims but volunteer as agents of other persons appear to lack standing. The fundamental problem is that an incentive award would not redress any of the plaintiffs' asserted injuries, though redressability is essential to standing. See, e.g., *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Murthy v. Missouri*, 144 S. Ct. 1972, 1985 (2024).

What's more, for reasons I set out in *Scott*, I do not see how a settling defendant can be ordered to pay extra to a plaintiff who has released his substantive claim. Nor do I see how a non-settling defendant could be ordered to pay more than the amount of damages specified by statute, just because a district judge thinks that representatives should get bonuses. Members of a certified class might agree to pay the representatives out of their own recoveries, but plaintiffs do not say that this

has occurred or will occur in this case (and they cannot commit anyone else to such a course).

*Espenscheid v. DirectSat USA, LLC*, 688 F.3d 872, 876 (7th Cir. 2012), holds that incentive awards are proper and that a quest for one keeps litigation alive even after the would-be representative has settled his own claim. Although *Espenscheid* did not consider arguments of the kind I advanced in *Scott*, the fact that a conflict among the circuits would persist even if we were to overrule *Espenscheid* means that we should leave that decision in place. Sooner or later, the Supreme Court (either in litigation or through its power to amend the Rules of Civil Procedure) must address the propriety of incentive awards—and, if these awards ever are proper, the Court needs to identify who pays (the class or the defendant).